UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA, Plaintiff,

v. Criminal Action No. 3:22-cr-115-DJH

MARTAVIOUS KINCAIDE, Defendant.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Deandre Swain moves to intervene in this matter "for the limited purpose of seeking to unseal the Plea Agreement Supplement to [Defendant] Martavious Kincaide's plea agreement." (Docket No. 24, PageID.68 (citing D.N. 23))  Kincaide was charged with three firearm offenses in 2022 (*see* D.N. 1) and pleaded guilty to all three counts on May 18, 2023.  (D.N. 21)  Kincaide's plea agreement was filed in the open record of this matter (D.N. 22), and, consistent with District practice and General Order, the plea supplement was filed under seal.  (D.N. 23)  Swain now seeks to intervene and unseal the plea supplement.  (D.N. 24)  As grounds for the motion, Swain explains that he is charged with murder in a Jefferson Circuit Court case, and Kincaide is a witness in that matter.  (*Id.*, PageID.71)  Swain argues that the sealed plea supplement may reveal information useful to his defense.  (*Id.*)  The United States opposes the motion.  (D.N. 25; D.N. 27)  After careful consideration, and for the reasons explained below, the Court denies the motion to intervene and declines to unseal the plea supplement.

**I.**

Deandre Swain and three other individuals are charged in Jefferson Circuit Court with "murder and multiple counts of wanton endangerment" following a drive-by shooting that resulted in the death of Tamal Wood.  (D.N. 24, PageID.70)  According to Swain, Kincaide is a witness in

1

the matter because Kincaide was "purportedly in the stairwell of his apartment complex" with Wood "when [the] drive-by shooting occurred." (*Id.*)  After Kincaide pleaded guilty in the present case to three firearm offenses, the plea agreement was filed in the record (D.N. 22), and consistent with the Western District of Kentucky's General Order 2010-06, the plea supplement was filed under seal. (D.N. 23)  General Order 2010-06 requires "[a]ll plea agreements" filed in the Western District of Kentucky "be accompanied by a sealed document entitled 'plea supplement'" that "will contain either a cooperation agreement or a statement that no such agreement exists."[1]  Swain argues that the plea supplement may contain a cooperation agreement between the government and Kincaide that Swain could use in the Jefferson Circuit Court case to "impeach [Kincaide's] credibility." (D.N. 24, PageID.71)  Essentially, Swain argues that the federal government may have offered Kincaide a benefit in the present case in exchange for his testimony in the state case. (*Id.*)  Swain therefore moves to intervene and unseal the plea supplement "to uncover any inducements or other government-conferred benefits granted [to] Mr. Kincaide." (*Id.*)

To begin, the Court believes it important to clarify what a plea supplement is and what it is not.  Per the General Order, a plea supplement in this District contains only one of two things: a cooperation agreement between the government and the defendant or a statement that no further agreement exists.  By practice and General Order, judges in this District entertain no other contents in supplements.

Swain maintains that he has a right to access the plea supplement in this case for two reasons: (1) General Order 2010-06 is facially unconstitutional because it "violates the First Amendment right to access" (D.N. 24, PageID.73), and (2) even if the General Order itself is

---

[1] United States District Court Western District of Kentucky, *General Order 2010-06*, https://www.kywd.uscourts.gov/general-orders-2010 (last visited August 9, 2023).

constitutional, "when properly assessed in light of case-specific information of record, the First Amendment interests favor unsealing the plea supplement in this case." (D.N. 26, PageID.108) The United States disputes both propositions and further argues that Swain lacks standing to intervene in this matter. (D.N. 25; D.N. 27) The Court will consider each issue in turn.

## II.

As a preliminary matter, the Court evaluates whether Swain has standing to intervene in this case. Standing requires an intervening plaintiff to have "suffered an injury in fact that is fairly traceable" to the responsible party and "likely to be redressable by a favorable decision." *Grae v. Corrs. Corp. of Am.*, 57 F.4th 567, 569 (6th Cir. 2023) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be both "concrete and particularized." *Id.* (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). Swain alleges that he has been injured by the denial of access to the information contained in Kincaide's sealed plea supplement because he cannot use that information in his state-court proceedings. (D.N. 24, PageID.71–72)

The Supreme Court has repeatedly recognized that an "informational injury" may be "sufficiently concrete," *Fed. Elec. Com'n v. Akins*, 524 U.S. 11, 12 (1998), to confer standing on a plaintiff who was denied information "which must be publicly disclosed pursuant to a statute." *Id.* at 21; *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *Pub. Citizen v. Dep't of Just.*, 491 U.S. 440, 449 (1989); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982). And circuit courts have extended this reasoning to conclude that a plaintiff has standing when he is denied information to which he has a constitutional or common-law right to access. *See e.g.*, *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 337 n.6 (7th Cir. 2019); *Carlson v. United States*, 837 F.3d 753, 758 (7th Cir. 2016) ("Injury-in-fact can arise from a comparable common-law source." (citations omitted)); *United States v. Valenti*, 987 F.2d 708, 711–12 (11th Cir. 1993)

3

(noting the Intervenor's "standing to intervene for purposes of challenging its denial of access to the underlying litigation" and explaining that such denial was "in violation of the Constitution and the common law."). An "informational injury" therefore arises when a plaintiff is denied access to information that he has a "legal right" to access by virtue of a statute, the Constitution, or the common law. *See, e.g.*, *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 269–72 (1st Cir. 2022) (citation omitted).

In 2021, the Supreme Court held that a plaintiff's legal right to access information is insufficient *on its own* to confer standing. *TransUnion*, 141 S. Ct. at 2214. The plaintiff must also demonstrate that he suffered some "downstream consequence" because he was denied the information. *Id.* (citation omitted). And "[s]ince *TransUnion*, the courts of appeals have consistently recognized that, to have standing, a plaintiff claiming an informational injury must have suffered adverse effects from the denial of access to information." *Grae*, 57 F.4th at 570 (collecting cases); *see also Kelly v. RealPage Inc.*, 47 F.4th 202, 213 (3rd Cir. 2022) (collecting cases). Thus, in the wake of *TransUnion*, Swain has standing to intervene here if he can demonstrate that he (1) has a legal right to access the plea supplement and (2) suffered a downstream consequence from being denied access to it. *See TransUnion*, 141 S. Ct. at 2214.

Swain maintains that he has a First Amendment right, as a member of the public, to access plea agreements in a criminal case. (D.N. 24, PageID.72) The Court agrees. The Supreme Court has long recognized that "the public and the press enjoy a right of access to criminal trials." *In re Search of Fair Fin.*, 692 F.3d 424, 429 (6th Cir. 2012) (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 577 (1980)). And the Sixth Circuit has held that "plea agreements are the quintessential judicial record, entitled to the protection of the First Amendment right to public access of judicial records." *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016)

(collecting cases). Swain is therefore correct that he, as a member of the public, has a First Amendment right to access Kincaide's plea agreement.

Swain does not specifically address the "downstream consequence" requirement from *TransUnion* in his motion. (*See* D.N. 24) He does, however, argue that he has been harmed by the sealing of Kincaide's plea supplement because he has been unable to "uncover evidence" that may "impeach [Kincaide's] credibility" as a witness in Swain's state-court proceedings. (*Id.*, PageID.71) Under the standard set forth in *TransUnion*, the Court concludes that the loss of information and its potential use in a separate criminal proceeding is a sufficient downstream consequence to confer standing. In reaching this conclusion, the Court considers the limited case law interpreting *TransUnion*'s downstream-consequence requirement. The Second Circuit has required a plaintiff to "show that he has an 'interest in using the information . . . beyond bringing his lawsuit.'" *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Laufler v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022). Swain certainly meets this threshold as his interest in the sealed plea supplement extends beyond this case to his separate state-court proceedings. Similarly, the Fifth Circuit has recognized that a plaintiff sufficiently alleges a downstream consequence when he "need[s] the [sealed] information in order to participate directly and actively in . . . the electoral and judicial selection process." *Campaign Legal Ctr. v. Scott*, 49 F.4th 931, 938 (5th Cir. 2022) (citing *Trichell v. Midland Credit Mgmt.*, 964 F.3d 990, 1004 (11th Cir. 2020)). This holding suggests that a downstream consequence includes the inability to use the sealed information for a separate, recognized purpose. Swain arguably satisfies this standard as well.

The Court finds further support for its conclusion that Swain's injury is a downstream consequence in pre-*TransUnion* case law. Circuit courts repeatedly found a concrete injury when plaintiffs were denied information that they intended to use in a separate judicial proceeding. In

5

*United States v. Pickard*, 733 F.3d 1297 (10th Cir. 2013), for example, the Tenth Circuit considered whether to allow a group of defendants to move to unseal a file containing information about confidential Drug Enforcement Administration informants "so they could use th[e] information, among other ways, as exhibits in ongoing litigation under the Freedom of Information Act." *Id.* at 1300. The United States argued that the defendants lacked standing, but the court disagreed, concluding that

> Defendants have alleged an actual injury: they cannot use the information in the sealed documents. And they want to use that information in a variety of ways. That injury is traceable to the district court's order sealing the . . . records during Defendants' trial. And an order from the district court unsealing the documents will redress Defendants' injury. This is sufficient to establish Defendants' standing to seek to have the . . . documents unsealed.

*Id.* at 1301 (citation omitted); *see also Rosenfeld v. Montgomery Cnty. Pub. Sch.*, 25 F. App'x 123, 131 (4th Cir. 2001) (concluding that plaintiffs had standing to move to unseal educational records for use in civil litigation because the court "s[aw] no reason why the standing of a news organization to seek review of a district court's sealing order should" be broader than that of individual plaintiffs).

In any event, as the Third Circuit noted in *Kelly*, courts have not regarded *TransUnion* as a "sea change to [the Supreme Court's] informational injury jurisprudence," but rather a "reiterat[ion of] the lessons of its prior cases." *Kelly*, 47 F.4th at 214 (citing *TransUnion*, 141 S. Ct. at 2214); *see also Grae*, 57 F.4th at 570; *Weiner v. Ocwen Fin. Corp.*, 343 F.R.D. 628, 632 (E.D. Cal. 2023) ("*TransUnion* was not a sea[ ]change."). The Court's conclusion that Swain has standing is thus further bolstered by the long line of precedent affirming a third party's standing to intervene to unseal documents in a criminal case based on his First Amendment right of access. *See, e.g.*, *Carlson*, 837 F.3d at 757–58 ("As a member of the public, Carlson has standing to assert his claim to the [sealed] grand-jury transcripts, because they are public records to which the public

6

may seek access, even if that effort is ultimately unsuccessful (perhaps because of sealing, national security concerns, or other reasons)."); *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008) (holding "that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper") (citation omitted); *United States v. Bas*, No. JKB-16-0324, 2022 WL 1270841, at *1 (D. Md. Apr. 28, 2022) ("Other circuits have similarly affirmed the propriety of 'a motion of intervene to assert the public's First Amendment right of access to criminal proceeding[s].'" (collecting cases)).

For all of these reasons, the Court concludes that Swain has demonstrated a downstream consequence as required by *TransUnion*: he is unable to access the sealed plea supplement that he has a First Amendment right to view, and as a result, he cannot use the supplement in separate state-court proceedings. Swain therefore has standing to intervene in this matter. *See TransUnion*, 141 S. Ct. at 2214; *Grae*, 57 F.4th at 570.

### III.

Having concluded that Swain has standing to intervene, the Court will now evaluate his arguments in support of unsealing the plea supplement. Kincaide's plea supplement was sealed in compliance with the Western District of Kentucky's General Order 2010-06. (*See* D.N. 21) General Order 2010-06 mandates that "[a]ll plea agreements" filed in the Western District of Kentucky "will be accompanied by a sealed document entitled 'plea supplement'" that "will contain either a cooperation agreement or a statement that no such agreement exists." General Order 2010-06. The Order recognizes that "a plea agreement may contain information regarding cooperation[,] and because such documents are available on the internet," sealing all plea supplements will ensure that "each case appear[s] identical." *Id.* Swain raises two arguments in support of his motion to intervene and unseal: (1) General Order 2010-06 is facially

7

unconstitutional because it "violates the First Amendment right to access" (D.N. 24, PageID.73), and (2) even if the General Order itself is constitutional, "when properly assessed in light of case-specific information of record, the First Amendment interests favor unsealing the plea supplement in this case." (D.N. 26, PageID.108)

The United States opposes both arguments. (D.N. 25; D.N. 27) It maintains that (1) the General Order is constitutional, and (2) unsealing the plea supplement in this case would "undermine[] the public value of a blanket sealing practice," which is intended to "protect[] the defendants who cooperate and facilitate[] the investigation of other crimes." (D.N. 25, PageID.101–02) The United States clarifies, however, that it is in no way commenting on whether Kincaide's sealed plea supplement does or does not include a cooperation agreement. (*Id.*) The Court will consider each of Swain's arguments in turn.

A.     **Constitutionality of General Order 2010-06**

Swain first argues that General Order 2010-06 is facially unconstitutional because it violates the public's First Amendment right to access judicial documents. (D.N. 24, PageID.73) The Court has already acknowledged that the public has a First Amendment right to access plea agreements in criminal matters. *See DeJournett*, 817 F.3d at 485. That right of access, however, "is not absolute," *id.* at 481, and it may be overcome "by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 484 (quoting *Press-Enterprises Co. v. Superior Ct.*, 464 U.S. 501, 510 (1984)). When a court considers whether this standard has been met, "[t]he interest [justifying closure] is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Id.* (second alteration in original).

The United States argues that General Order 2010-06 overcomes the First Amendment right of access because it serves the compelling interests of "obscur[ing] cooperation information," "prevent[ing] retaliation," and "promot[ing] the efficiency of criminal investigations." (D.N. 25, PageID.103) Multiple circuit courts "have held that protecting cooperating inmates serves a compelling interest under the First Amendment." *United States v. Doe*, 962 F.3d 139, 148 (4th Cir. 2020) (collecting cases). The Court agrees and concludes that General Order 2010-06 serves a compelling interest by obscuring any cooperation agreements and is "essential to preserve higher values." *DeJournett*, 817 F.3d at 484 (quoting *Press-Enterprises Co.*, 464 U.S. at 510).

The government also maintains that General Order 2010-06 is "narrowly tailored" because "the Court only seals the supplement" rather than the entire plea agreement. (D.N. 25, PageID.103–04) Swain disagrees and argues that the General Order is not particular enough to satisfy the narrowly-tailored requirement because the Order specifies that all plea supplements shall be sealed and does not require a judge to make an individual finding regarding the need for sealing in each case. (D.N. 24, PageID.73) Instead, it "requires the Clerk [of Court] to seal all plea supplements *without regard to their contents*." (*Id.* (emphasis in original)).

The parties cite two circuit-court cases that reached opposite conclusions on the issue of whether blanket sealing policies are constitutional. The United States cites a Fourth Circuit case (*see* D.N. 25, PageID.101), *United States v. Doe*, in which the court considered whether it violated the First Amendment right of access to seal a plea supplement when the district court had adopted a Standing Order that "require[d] automatic sealing of substantial assistance motions for an extendable period of two years." 962 F.3d 139, 149 (4th Cir. 2020). The Fourth Circuit undertook the two-part analysis outlined above, and with respect to the first prong, had "no difficulty concluding that protecting cooperators from harm is a compelling interest that can justify sealing."

9

*Id.* at 148.  And it took judicial notice of "the findings contained in a 2016 report by the Committee on Court Administration and Case Management of the Judicial Conference of the United States ('CACM Report'), which evaluated the need to protect government cooperators in federal prisons."  *Id.* at 147 (citation omitted).  The CACM Report recognized that "[r]emote electronic access" to case dockets through PACER has "dramatically increased the potential for illicit use of case information regarding cooperators" and concluded that "action was necessary and justified" to prevent "harms to individuals and the administration of criminal justice."  *Id.* at 150 (citing CACM Report).  The Report further explained that "[a]s of June 2016, more than one-third of federal district courts had 'adopted local rules or standing orders to make all criminal defendants appear identical in the record to obscure cooperation information.'"  *Id.* (citing CACM Report at 3 n.3).  Based on the Report's findings and its own experience, the Fourth Circuit held that the Standing Order served a compelling interest.  *Id.* at 151 (citation omitted).

The court next evaluated whether the Standing Order was narrowly tailored to achieve that interest.  *Id.* at 152.  It considered whether several alternatives to a blanket sealing policy would achieve the same goals, such as a case-by-case analysis on the need to seal or a policy of redacting relevant portions of court documents.  *Id.*  With respect to the former, the Fourth Circuit noted that "the Eastern District [of North Carolina] ha[d] already concluded, after weighing such arguments, that '[c]ase-by-case review would not work.'"  *Id.* (citing E.D.N.C. Standing Order).  And it gave weight to the government's argument that it would be overly "burdensome to litigate every sealing motion filed by a defendant."  *Id.*  With respect to a redaction policy, the court concluded that "[c]ommon sense confirms" that "redaction cannot protect Defendant himself because redacting the order would merely 'flag the filings in his case.  The publicly available and remotely accessible filings would immediately look different from the filings in non-cooperators' cases.'"  *Id.* (quoting

10

*United States v. Doe*, 870 F.3d 991, 1001 (9th Cir. 2017)). Based on these considerations, "the Eastern District ha[d] found that alternatives to automatic sealing 'would not work' to protect inmates who have provided substantial assistance to the government." *Id.*  The Fourth Circuit therefore agreed that "sealing the order at issue [wa]s the narrowest means of protecting the compelling interest in th[at] case" and others. *Id.*

Swain, in contrast, directs the Court's attention to a Tenth Circuit case, *United States v. Bacon*, that he argues supports his contention that General Order 2010-06 is not narrowly tailored because it does not require judges to conduct a case-by-case analysis on the propriety of sealing.[2] (D.N. 26, PageID.106 (citing 950 F.3d 1286 (10th Cir. 2020))) The defendant in *Bacon* appealed a district court's order denying his motion to unseal the supplement to his plea agreement. *Id.* at 1289.  The district had adopted a local rule essentially identical to General Order 2010-06, and the district court denied the defendant's request to unseal because "[w]e do file the supplement under seal in every case, and we do that to protect the rare person who does cooperate." *Id.* at 1290 (citation omitted).  After considering whether the defendant had a common-law right to access the plea supplement, the Tenth Circuit reversed and remanded the trial court's order upon finding that "the district court did not . . . provide any case-specific explanation for its decision to keep [the defendant's] plea supplement under seal"; instead, the district court relied solely on "the District

---

[2] Swain also cites to a case in which he argues the Sixth Circuit held that similar blanket sealing policies are unconstitutional.  (D.N. 26, PageID.108 (citing *DeJournett*, 817 F.3d at 485))  The Sixth Circuit did not reach such a broad conclusion in *DeJournett*, however.  It considered as a matter of first impression whether plea agreements are judicial records entitled to the First Amendment right of access. *DeJournett*, 817 F.3d at 484 ("We have not . . . addressed the specific issue [of] whether plea agreements are subject to this constitutional protection.").  Upon concluding that plea agreements are subject to constitutional protection, the Sixth Circuit remanded the case, but it did not hold that the district court's sealing policy violated the First Amendment. *Id.* at 485.  Rather, it remanded the matter so that the district court could conduct a case-specific First Amendment analysis as required by *Press-Enterprises Co*. *Id.* (citing 464 U.S. at 510).

11

of Utah's local rules." *Id.* at 1294. The Tenth Circuit concluded that such a "generalized sealing analysis does not" suffice. *Id.*

A district court following *Bacon*'s approach would be required to provide on the open record a "case-specific explanation" for sealing each plea supplement. *Id.* That requirement would seem to eviscerate the goal of protecting cooperators because the court's explanation would necessarily identify which cases involve cooperation and which do not. Furthermore, the "case-specific explanation" in this context does not appear to be required by Supreme Court precedent. In *Press-Enterprises*, the Supreme Court explained that specific findings are necessary to allow "a reviewing court [to] determine whether the [sealing] order was properly entered," and thus preserve the presumption of public access to court proceedings. *Press-Enterprises Co.*, 464 U.S. at 510. Under the policy at issue in *Bacon*, and under the General Order at issue here, appellate courts have sufficient information to make that determination. In the event that an order sealing a plea supplement is appealed from this District, the Court of Appeals will have access to both the sealed plea supplement as well as the sealed portion of the plea-colloquy transcript discussing the supplement. And it will have the language of General Order 2010-06 which provides the justification behind a blanket-sealing policy. The Sixth Circuit will therefore have all the information it requires to assess whether sealing was appropriate and required and comported with the requirements of the First Amendment. *See Doe*, 962 F.3d at 147–52. Swain's argument that a blanket sealing policy "eliminates the requirement that the Court make 'specific findings and conclusions [that] justify nondisclosure'" (D.N. 24, PageID.73 (quoting *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016))), does not consider that the goals of that requirement are still being served. The Court is therefore unpersuaded by *Bacon*'s reasoning and declines to adopt the Tenth Circuit's approach.

The Court instead finds the Fourth Circuit's analysis from *Doe* persuasive and concludes that General Order 2010-06 does not violate the First Amendment. *See* 962 F.3d at 147–52. The U.S. District Court for the Western District of Kentucky has carefully considered the issue and concluded that its policy is the narrowest method of achieving the compelling interest of protecting the safety of cooperators. Further, the District's policy is consistent with the recommendation by the Judicial Conference of the United States Committee on Court Administration and Case Management in its 2016 Report: "the harms to individuals and the administration of justice in this instance are so significant and ubiquitous" that "where reasonably practicable, [courts] should avoid discussing or making any reference to the fact of a defendant's . . . cooperation." *Id.* at 150–51 (quoting the CACM Report for which the Court takes judicial notice). For all these reasons, the Court rejects Swain's argument.

**B.     Case-Specific Unsealing**

Swain further argues that even if the General Order is constitutional, the Court should nevertheless unseal the plea supplement in this case because Swain's interest in obtaining "exculpatory information regarding Mr. Kincaide—a witness and named victim in the Commonwealth's case against him," is particularly strong. (D.N. 26, PageID.108–09 (citation omitted)) The Court disagrees. Unsealing a plea supplement in one case would fatally undermine the purpose of the blanket sealing policy because it would open the door to motions to intervene in all criminal cases in which a plea supplement may contain information that might aid a third party's case. *See generally Doe*, 962 F.3d at 152. And the Fourth Circuit in *Doe*, upon concluding that a blanket sealing policy did not violate the First Amendment, recognized that when districts have "take[n] blanket measures, courts within the district should act consistently with the concerns underlying that policy." *Id.* at 153. The Court agrees that consistency is a necessary element of

13

the District's General Order and concludes that sealing is warranted in this case to conform with General Order 2010-06. *See id.* at 152. Further, such a finding is consistent with Sixth Circuit and Supreme Court precedent. *See Press-Enterprises Co.*, 464 U.S. at 510; *DeJournett*, 817 F.3d at 484 (citation omitted). Accordingly, Swain's motion to intervene will be denied and the plea supplement will remain sealed. *See Press-Enterprises Co.*, 464 U.S. at 510; *DeJournett*, 817 F.3d at 484 (citation omitted).[3]

### IV.

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Deandre Swain's motion to intervene for the limited purpose of unsealing the plea supplement (D.N. 24) is **DENIED**.

August 10, 2023

David J. Hale, Judge
United States District Court

---

[3] In reaching this conclusion, the Court does not suggest that a judge may seal any other category of information without an individualized assessment (e.g., personal health or financial information, information implicating the privacy of a victim). In each of those situations, a court must make individual and specific findings on the record regarding the appropriateness of sealing. *See Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593 (6th Cir. 2016); *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1180–81 (6th Cir. 1983).